## CARTER v. WILSON.

No. 22538. Opinion Filed Nov. 1, 1932.

Rehearing Denied Dec. 27, 1932.

Bond & Bond, for plaintiff in error.

Sullivan & Rice, for defendant in error.

KORNEGAY, J. This is a proceeding in error to review the action of the district court of Stephens county, Honorable E. L. Richardson being the trial judge. The case, as disclosed by the case-made, was an action by a former ward against his guardian of person and estate, for the purpose of collecting the amount found due by the probate court to the plaintiff from the defendant below, in accordance with his report to the probate court, namely, $5,050.23, and also for the purpose of recovering $3,000, alleged to have come into the hands of the defendant after the ward arrived at the age of 21, pursuant to a power of attorney that the plaintiff below made to the defendant below on the 27th of July, following his majority on the 4th of July, 1927.

The petition was verified by the ward on the 18th of March, 1929, with a lien claimed.

The order approving the final report is set out as exhibit "A." It appears therefrom that the guardian appeared in person and by his attorney, J. C. Sullivan, and no one appeared on behalf of the ward. From that report it is clear that the statement of the account, as rendered by the guardian, was the basis for the accounting, the accounting calling for $7.50 to be paid to J. C. Sullivan, and $7.85 to be paid as court cost, leaving the balance of $5,034.88 to be paid to Willie Wilson, the ward. The amount paid J. C. Sullivan was attorney's fees. The sureties on the guardian's bond, both the company surety and the individual sureties, were ordered to be discharged. This order appears to have been made and filed on the 12th of September, 1927.

There appears also in the record a statement, as follows:

"State of Oklahoma, Stephens County.

"In the County Court in and for Said County and State.

"In the Matter of the Guardianship of Willie Wilson.

"To Whom It May Concern:

"I, Willie Wilson of Marlow, in the county of Stephens and state of Oklahoma, do hereby certify that I attained the age of 21 years on the 4th day of July, 1927. I do further certify that I have made full and final settlement with G. W. Carter, my former guardian, since I have arrived at said age. And I do hereby acknowledge the receipt of 5,050.23 dollars and cents in full of all demands against him as such guardian, together with all books, paper and property in his possession belonging to me.

"I hereby enter my appearance in the matter of G. W. Carter application for discharge as such guardian, waiving all further notice.

"Witness my hand this the 4th day of July, 1927.

"Willie Wilson.

"Subscribed and sworn to before me this the 4th day of July, 1927.

"L. A. Edwards,

"Notary Public Stephens County, Okla.

"(Seal)

"My Commission Expires: Jan. 9th, 1931."

It was alleged that, notwithstanding this receipt, nothing had been paid. A power of attorney was set out as an exhibit, dated the 23rd of July, 1927, purporting to have been executed by the ward, empowering the former guardian to deal with his property, and to grant, bargain, or sell any or all of a body of lands mentioned, or any part thereof, "for such price, and on such terms as to him shall seem best, and for me, and in my name, to make, execute, acknowledge and deliver, good and sufficient deeds and conveyances for the same either with or without covenants and warranty." There was further power to mortgage, rent, bring suit, collect anything with reference to said lands, with power to invest his money and loan it as he saw fit and proper. This was placed on record by the plaintiff in error on the 29th of July, 1927.

Motions to make more definite and certain were filed and sustained, followed by a first amended answer, setting up the filing of the report and the action of the court thereon, and admitting the execution of the receipt of the 4th of July, 1927, and denying all efforts to cheat or defraud, and averring complete payment of the amount found due by a settlement had on the 27th of November, 1928, at which time a second receipt was taken and all books, papers and property were turned over to the plaintiff. Reliance was placed upon its having been acknowledged before a notary public, and execution of the power of attorney was admitted and denial was made of any exercise of authority thereunder.

Two receipts are set out, one being exhibit "A" to the answer, which is practically the same as the original receipt, made an exhibit to the petition, with the exception that the date was the 27th of November, 1928, and it was not verified as the original was. There was a receipt for all moneys, books, papers and bills that had been paid by the guardian, G. W. Carter, and $5,050.23 found to be due and owing on the final account, and the canceled checks, and especially mentioning $2,553.29, paid on the 6th of December, 1927, and $1,000 consideration for 20 acres of land sold by the ward to the defendant, described as "east one-half of the west one-half of the west one-half of the northeast quarter of section 8, township 2 north, range 7 west, as shown by deed executed by me on the 19th day of December, 1927," and a blanket receipt for all rents and revenues, and a release and discharge from any and all claims or demands of any kind or character whatever. There was a further recital therein of being at that time indebted to the former guardian in the sum of $777.80. This appears to have been acknowledged before a notary public, James B. Gray.

A reply was made admitting the signing of various receipts, but claiming that they

were for a different purpose, and claiming undue influence by reason of the confidential relationship between the parties, setting up the fact that at all times the funds of the plaintiff were in the hands of the defendant.

The original plaintiff died and the case was revived in the name of his widow, who happened to have the same given name as himself, and with proceedings so framed the parties went to trial before a jury on the 4th of December, 1930. The parties proceeded to introduce their evidence, which consisted of the receipts and power of attorney and testimony as to the relationship between the ward and his guardian, and as to whether or not the ward was of a good business capacity; some as to his not having any money; some as to the later dealings with the guardian; some as to the collections made for rents by the defendant; and there was some evidence as to the actions of the intestate, and his frugality, and his being killed in a fight, and the action of the parties about the hospital, and their conversation about settling the estate.

There was counter evidence concerning the business capacity of the ward, and the statements of the ward as to having settled with the guardian, and about the lawsuit he began, and the efforts of the defendant to suppress it, and the efforts of the attorney to carry it on. There was also testimony about gasoline and the automobile coming from the Ford factory, and the Chevrolet factory, and the liberality of the ward in dealing with his mates, and his marriage and living in the house with the guardian, moving out and getting a house close by, and repair and plumbing bills, and his having no money, and some inference that his wife abandoned him.

Bankers came in to show his checking accounts. One account, with the First National Bank of Marlow, showed a deposit on January 2, 1929, of $150, and finally wound up with a balance of 35¢ drawn out on the 22nd of April, 1930. The other account, State National Bank, showed a deposit of April 20, 1928, of $100, and $100 June 5, 1928, and $250 August 7, 1928, with a balance on October 29, 1928, and a closure on the 30th of October, 1928. The other bank, National Bank of Marlow, showed no account of intestate. At the close of the evidence request was made by the defendant below, present plaintiff in error, for an instructed verdict, followed by some requested instructions, all of which were refused, and the court instructed the jury as to the effect of the receipts and their contradiction, and the burdens resting upon the various parties.

The jury returned a verdict, which was unanimous, for the amount found due by the county court, and with interest at 6 per cent. from the 4th of July, 1927. This was followed by a motion for a new trial, complaining of the instructions, and the verdict, and the conduct of the court with reference to the admission of evidence and its rejection, objection being urged with reference to excluding the testimony of G. W. Carter, the defendant. The instructions especially complained of were paragraphs 2, 2½, 3, 4 and 5, and also refusing to give requested instructions Nos. 2, 3 and 4. Complaint was made about the court's cross-examining the witness Essie Carter. This motion was overruled, which was followed by supersedeas bond, with G. W. Carter as principal, and Ralph Eubanks, J. W. Bayless, A. T. Carter and Lucy Carter as sureties, reciting therein that the recovery was $5,034.88, with 6 per cent. interest from July 4, 1927.

A lengthy brief is presented here, reviewing the testimony and presenting a great variety of cases wherein the court has allowed settlements to stand. Beginning on page 34, assignments of error are set out, the first being overruling motion for new trial; second being the overruling of the demurrer to the petition; third in overruling the demurrer to the evidence of the plaintiff. With reference to each of these assignments some argument is made. An inspection, however, of the evidence in this case, is convincing that the ward, a full-blood Indian, had lived for several years in the house of the defendant Carter, and until he arrived at the age of maturity. It is further convincing that both before and afterwards he was completely under the domination of the defendant Carter, notwithstanding his educational qualifications and his native ability. The power of attorney that was gotten from him was to dispose of his property as the grantee saw fit, yet there was no necessity, apparently, for that power of attorney. The receipt that was filed with the final report was strongly indicative of the fact that whatever the ward was told to sign he signed, and it is evident that at that time the property was in the hands of the plaintiff in error, notwithstanding the receipt that was furnished showed it had then been turned over.

It is further evident from that report that interest was being allowed at 4 per cent. on $5,000, amounting to $300, though who was paying it is not disclosed. On the face of the report there is nothing to identify the vouchers exhibited, if any were exhib-

ited. However, there is a statement at the end of the report as follows:

"I, Willie Wilson, do hereby certify that I have read the within and foregoing report and do hereby ratify and affirm the same to be true and correct.

"Willie Wilson.

"Subscribed and sworn to before me this 4th day of July, 1927.

"L. A. Edwards, Notary Public.

"My commission expires, Jan. 9, 1931."

The order of discharge does not indicate that anything was done other than to follow the report and rely upon the ward's statement of having examined it and approved it. It, however, does not find that a settlement has been had or payment made, but finds:

"The court further finds that the said report shows a balance of $5,050.23 due said minor by said guardian: the court further finds that there is due the court clerk of Stephens county, Okla., the sum of $7.85 as court costs in said case, and that there is due to J. C. Sullivan the sum of $7.50 which should be paid by said guardian and deducted from said sum of $5,050.23 which will leave a balance of $5,034.88, which said guardian should pay to Willie Wilson who has now attained his majority and take a receipt from Willie Wilson for said sum of money."

Evidently the report was made on a printed form.

We do not think that the court erred in overruling the demurrers, either to the petition or to the evidence. As to whether or not the court erred in overruling the motion of plaintiff in error for new trial depends largely on whether the evidence would justify the finding of the jury. A careful review of the evidence and of the deals between the parties is strongly indicative of the fact that the original plaintiff below was in the hands of plaintiff in error as "the clay is in the potter's hand." The jury, however, did not find anything except what was admitted by the plaintiff in error to have been due at one time to the plaintiff below, intestate of the present defendant in error. The order of court shows that the first receipt given in July, 1927, was not true. The other receipts, given in 1928, were apparently unnecessary, except out of a superabundance of extreme caution.

In our view of the matter, the evidence warranted the finding of the jury, notwithstanding the receipts were signed by the ward.

The instructions given fairly represent the law with reference to the effect of a receipt, and with reference to the necessity that is laid upon a fiduciary, such as a guardian of the person and estate of a minor is, to show fair dealing. A great many cases are cited to show on the one side that the courts guard with a jealous eye transactions between a ward and his guardian, especially with reference to settlements. As applied to this case, the ward was a full-blood Indian. He had lived in the house of the guardian for several years prior to his reaching his majority. He evidently, in executing the receipt of the 4th of July, 1927, gave a receipt for what the guardian knew and he knew had not been paid him. His power of attorney, made shortly afterwards, surrendered practically to his guardian the same domination of his lands that had been held by the guardian before, except that prior to that time it required the sanction of a probate court, and after that time it required nothing except trust and confidence on the one side and fair dealing on the other. See Daniel v. Tolon, 53 Okla. 666, 157 P. 756. At page 75 of the brief of the plaintiff in error is a fair epitome of what is in the case, as follows:

"This case involves only one question, viz., had the defendant paid plaintiff the amount of money due him under the guardian's final report."

The jury found that it had not been paid. We do not think the verdict should be disturbed. The cause is affirmed at the cost of plaintiff in error.

The defendant in error has asked that in case of an affirmance, judgment be rendered on the supersedeas bond. It appears from the journal entry that judgment below was entered on the 6th day of December, 1930, for the sum of $6,068.71, with interest at 6 per cent. per annum until paid, and costs of suit. It is accordingly ordered that the defendant in error recover of the plaintiff in error and the sureties on the supersedeas bond, namely, Ralph Eubanks, J. W. Bayless, A. T. Carter, and Lucy Carter, the sum of $6,068.71, together with 6 per cent. interest thereon from the 6th day of December, 1930, together with costs of the suit in the court below, and also any sums that may have been paid by the defendant in error as costs since the date of the judgment of the court below.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur.